## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLEN CANNON,                         ) | |
|                                       ) | |
|           Petitioner,                 ) | |
|                                       ) | |
|      v.                               ) | Civil Action No. 10-411-GMS |
|                                       ) | |
| PERRY PHELPS, Warden, and             ) | |
| ATTORNEY GENERAL OF                   ) | |
| THE STATE OF DELAWARE,                ) | |
|                                       ) | |
|           Respondents.                ) | |

---

Allen Cannon. *Pro se* petitioner.

Elizabeth R. McFarlan, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

## MEMORANDUM OPINION

_June 21_ , 2013
Wilmington, Delaware

Steel, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner Allen Cannon ("Cannon"). (D.I. 2)  For the reasons discussed, the

court will deny the petition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On July 31, 2006, someone fired at least four shots at Terrence Dendy. *State v. Cannon*,

Cr. ID No. 0607025498, Rep. & Rec., Parker, Cmm'r., at 1 (Del. Super. Ct. Aug 11, 2009).  The

target's father, Richard Dendy, witnessed the shooting.  Both Terrence and his father Richard

made the following contemporaneous statements to the police on the evening of the shooting.

The day before the shooting, Terrence had a fight with the family of a girl who had used his car

without permission.  Terrence went to the girl's house to complain to her mother.  Some type of

altercation involving Cannon ensued following Terrence's complaint to the girl's mother.  The

next evening, Terrence drove his mother's car to a convenience store operated by his family on

10th Street in Wilmington.  Terrence went to his car to retrieve a phone charger.  Richard

accompanied his son outside.  While Terrence was crossing the street towards his car, Cannon

came up and asked Terrence to return his chain, believing that Terrence had taken it the night

before during the altercation following the complaint to the girl's mother about the car.  Terrence

told Cannon he did not have any chain, and then Cannon took out his gun and started firing shots

at Terrence.  Terrence ducked down behind the car for cover.  Richard was standing close to

Cannon and told him to stop firing the gun at his son and attempted to take the gun away from

him.  After firing the shots, Cannon ran away.  *Id.* at 2-3.

1

That evening, Detective Looney from the Wilmington Police Department went to investigate the shooting incident. Richard went up to Detective Looney and advised him that "Messy shot my son." Messy was Cannon's nickname. *Id.* at 3. That same evening, at about 10 p.m., both Richard and Terrence Dendy voluntarily went to the police station to provide statements. These statements were videotaped. At the police station, Richard again unequivocally identified Cannon as the shooter, referring to Cannon by his nickname "Messy." Richard told the police that earlier that evening "Messy" walked up and said hello "Mr. Richie" and then asked Terrence if Terrence had his chain. Messy then pulled out a gun and started shooting at Terrence. Richard was standing right next to Messy and was grabbing at him trying to get the gun away but Messy kept stepping away. After firing five to six shots, four of which hit the car, Messy ran away. *Id.*

On the evening of the shooting, Terrence was reluctant to identify the shooter, and advised the police that under no circumstances was he going to testify in court. He did not want his name associated in any way with his statement to the police. He then stated that earlier that evening Cannon had accused him of having taken a chain during the altercation the night before. Terrence told the police his father stepped between the shooter and him to attempt to stop the shooting. Although he did not know Cannon's name or nickname, Terrence unequivocally identified Cannon as the shooter from a photo lineup in a matter of seconds. *Id.*

Richard and Terrence Dendy, however, changed their stories by the time of the trial in February 2007. Although neither denied making the prior statements, they alleged that they were not telling the truth on the night of the shooting when they identified Cannon as the shooter. Terrence testified that, sometime after the shooting, he told Cannon's attorney that Cannon was

2

not the shooter, but did not contact the police or the prosecutor to give them that information. Terrence also testified that, while crossing the street towards the car to retrieve a phone charger, Terrence heard someone yell "watch out." He turned around, "saw the gun," and ducked behind the car. When the shooting stopped, he got up and started running after the shooter, but did not catch him. Terrence testified that he did not get a good look at the shooter and did not know his identity. *Id.* at 4.

In turn, Richard testified that while his son was crossing the street towards the car, he stood in front of the store and Cannon passed by, greeted him, and started crossing the street. Richard then heard two shots. According to Richard, Cannon ran back toward him, after which someone fired three more shots. Richard then went over to the shooter and told him to stop firing the gun at this son. The shooter then ran away. Richard did not know the identity of the shooter. *Id.*

Because their testimony was factually incompatible with their previous statements to the police identifying Cannon as the shooter, Terrence and Richard explained to the jury why they had changed their testimony. Richard testified that he only got a brief glimpse of the shooter because he was focused on his son. Richard testified that he identified Cannon as the shooter because "people" told him that it was "Messy" (Cannon's nickname). He therefore took it for granted that Messy was the shooter but found out later that it was not Messy. *Id.*

Terrence also testified that he did not get a good look at the shooter and did not know his identity. He also explained that his statements to the police were based on "people" or "somebody" telling him that Cannon was the person who shot at him. *Id.*

On February 2, 2007, a Superior Court jury found Cannon guilty of first degree reckless endangering, possession of a deadly weapon during the commission of a felony ("PDWDCF"), and criminal mischief. Cannon had previously waived his right to a jury trial on the charge of possession of a deadly weapon by a person prohibited ("PDWPP"), and the trial judge found him guilty of that charge after the jury entered its verdict. The Delaware Supreme Court affirmed Cannon's convictions and sentences on direct appeal. *Cannon v. State*, 2008 WL 1960131 (Del. May 6, 2008).

In February 2009, Cannon filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied. The Delaware Supreme Court affirmed that decision. *Cannon v. State*, 992 A.2d 1236 (Table), 2010 WL 1267751 (Del. Apr. 1, 2010).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

4

**B. Exhaustion and Procedural Default**

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural

manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3;

*Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d

Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically

exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman*

5

*v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless,* 172 F.3d at 260;  *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000);  *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001).  A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496.  Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).  In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial –  that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*House v. Bell*, 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

If the state's highest court has not adjudicated a federal habeas claim on the merits, but the claim is exhausted and the merits are properly before the federal court on habeas review, then the federal court must review the claim *de novo. See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011)(citing *Porter v. McCollum*, 558 U.S. 30 (Jan. 19, 2011)). *De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional

---

[1]A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (2000)(O'Connor, J., concurring).

Finally, whether reviewing a habeas claim *de novo* or under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Viewing Cannon's form petition and memorandum together, the court interprets Cannon's timely filed petition as asserting the following seven grounds for relief: (1) the trial court erred by permitting the Dendys to testify that "people" told them that Cannon was the shooter (D.I. 2 at 5); (2) the trial court violated his confrontation clause rights by permitting a Detective Selekman to testify in lieu of the evidence detection unit ("EDU") officer who collected evidence at the scene (D.I. 8 at 1); (3) trial counsel provided ineffective assistance in several ways (D.I. 2 at 7; D.I. 8 at 10-33); (4) there was insufficient evidence at trial to establish his guilt (D.I. 2 at 8); (5) he did not knowingly and voluntarily waive his right to a jury trial on the charge of possession of a deadly weapon by a person prohibited because the trial court did not conduct an on-the-record colloquy (D.I. 2 at 10; D.I. 8 at 30-33); (6) he is actually innocent (D.I. 2 at 12); and (7) the Dendys' initial identifications of Cannon as the shooter were made under unduly suggestive circumstances (D.I. 8 at 19-33). The State contends that claims two,

8

four, five, and seven should be denied as procedurally barred, and claims one, three, and six

should be denied for failing to satisfy § 2254(d); the State's answer does not address claim one.

## A. Claim One: Non-Cognizable and Procedurally Barred

In claim one, Cannon contends that the trial court erred in admitting the Dendys'

testimony because such testimony constituted inadmissible hearsay. Cannon raised this claim on

direct appeal, but conceded the Delaware Supreme Court could only review the argument under

the plain error standard because trial counsel did not raise this objection during the trial. (D.I.

19, Appellant's Op. Br. in *Cannon v. State*, No.295,2007, at 7)  The Delaware Supreme Court

denied the claim after determining that the trial court did not commit plain error in admitting the

challenged testimony. *Cannon*, 2008 WL 1960131, at *3.

When Cannon raised this hearsay argument on direct appeal, he contended that the

admission of the Dendys' testimony without any corroborating evidence to implicate Cannon

violated his confrontation clause rights and deprived him of a fair trial. (D.I. 19, Appellant's

Op. Br. in *Cannon v. State*, No.295,2007 at 11)  However, in this proceeding, Cannon presents

the issue as an error of state evidentiary law, and does not assert any confrontation clause

violation or fair trial deprivation. (D.I. 2 at 5)

It is well-settled that "[s]tate courts are the ultimate expositors of state law,"[1] and claims

based on errors of state law are not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S.

62, 67-68 (1991).  Given Cannon's presentation of claim one as an issue of state law, the court

concludes that it must deny claim one for failing to assert a proper basis for federal habeas relief.

However, even if claim one should be construed as asserting an appropriate basis for

federal habeas review, the court concludes that it does not warrant relief. By explicitly applying

---

[1] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

the plain error doctrine (of Delaware Supreme Court Rule 8) to claim one on direct appeal, the

Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S.

255,263-64 (1989), that its decision rested on state law grounds. In turn, Delaware's plain error

doctrine constitutes an independent and adequate state procedural rule for procedural default

purposes. *See Campbell v. Burris*, 515 F.3d 172, 177-82 (3d Cir. 2008). Accordingly, claim one

is procedurally defaulted, meaning that the court cannot review its merits absent a showing of

cause and prejudice, or a miscarriage of justice.

Petitioner appears to assert ineffective assistance of trial counsel as cause for his default

of the instant argument. "A successful claim of ineffective assistance of counsel . . . satisfies the

'cause' prong of a procedural default inquiry." *United States v. Garth*, 188 F.3d 99, 107 (3d Cir.

1999). However, as explained later in this opinion, counsel's failure to object to the Dendys'

testimony as inadmissible hearsay did not rise to the level of constitutionally ineffective

assistance. *See infra* at 14-16. Thus, trial counsel's alleged inaction does not constitute cause

for Cannon's procedural default of claim one.

In the absence of cause, the court will not address the issue of prejudice. Additionally,

the court cannot apply the miscarriage of justice exception to excuse Cannon's default, because

he has failed to provide new reliable evidence of his actual innocence.[2] Accordingly, the court

will alternatively deny claim one as procedurally barred.

### B. Claims Two, Four, and Seven: Procedurally Barred

The record reveals that Cannon did not exhaust state remedies for claims two, four, and

seven. For instance, in claim two, Cannon contends that the trial court violated his rights under

---

[2] Cannon contends that he is "actually innocent" because the Dendys recanted their initial identification of him when they testified during the trial. (D.I. 2 at 12) However, the fact that the Dendys' recantation was presented and explored during Cannon's trial disqualifies it as "new reliable evidence" for purposes of the miscarriage of justice exception.

the confrontation clause by permitting Detective Selekman to testify in lieu of the evidence detection officer who collected evidence at the scene. Cannon, however, did not raise any substantive confrontation clause argument concerning Detective Selekman's testimony on direct appeal or on post-conviction appeal. And, although Cannon did raise an argument in his Rule 61 motion and on post-conviction appeal that counsel provided ineffective assistance by failing to call the evidence detection officer to testify on his behalf at trial, an ineffective assistance of counsel argument raising the issue of counsel's failure to call the evidence detection officer as a witness is not "substantially equivalent" to an argument asserting a substantive confrontation clause violation stemming from calling Detective Selekman. Therefore, the court concludes that Cannon has not exhausted state court remedies for claim two. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

In claim four, Cannon asserts that there was insufficient evidence to support his conviction. Although Cannon raised this argument in a motion for judgment of acquittal filed at the end of trial, he did not present this insufficiency of the evidence argument to the Delaware Supreme Court on direct or post-conviction appeal. Therefore, he has not exhausted state remedies for claim four.

And finally, the record reveals that Cannon never presented claim seven's argument regarding an unduly suggestive identification procedure to the Delaware Supreme Court on direct or post-conviction appeal. Thus, Cannon did not exhaust state remedies for claim seven.

At this juncture, Delaware Superior Court Criminal Rule 61(i)(1), (2) and (3) would bar Cannon from presenting claims two, four, and seven to the Delaware state courts in a new Rule 61 motion. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d

11

573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because petitioner did not raise the claim in the proceedings leading to his conviction). As a result, these claims are procedurally defaulted, meaning that the court cannot review their merits absent a showing of cause and prejudice, or that review is necessary to prevent a miscarriage of justice.

Cannon does not allege, and the court cannot discern, any cause for his default of these three claims. In the absence of cause, the court need not address the issue prejudice. Moreover, the court concludes that the "miscarriage of justice" exception to the procedural default doctrine is inapplicable, because Cannon has failed to provide new reliable evidence of his actual innocence. Accordingly, the court will deny claims two, four and seven as procedurally barred.

### C. Claim Three: Ineffective Assistance of Counsel

In claim three, Cannon asserts that defense counsel was ineffective for: (a) failing to object to the admission the Dendys' out-of-court statements pursuant to Del. Code Ann. tit. 11, § 3507; (b) failing to object on hearsay grounds to the Dendys' testimony that unnamed people told them that Cannon was the shooter; (c) failing to request "identity" and "limited" jury instructions regarding the Dendys' testimony; (d) failing to present expert medical testimony that that he could not have been the shooter because his arm was in a cast; (e) failing to investigate any circumstances of the crime; (f) failing to argue that the Dendys' prior out-of-court identification was the result of an unduly suggestive procedure; and (g) failing to call the evidence detection officer to testify on his own behalf at trial.

Cannon did not exhaust allegations (d) and (f) of claim three because he did not present them to the Delaware Supreme Court on post-conviction appeal. At this juncture, these two allegations are procedurally defaulted, because Rule 61(i)(1) and (2) would preclude Cannon

12

from raising these claims in a new Rule 61 motion. Cannon does not assert any cause for his default, and the miscarriage of justice exception is inapplicable for the reasons previously discussed. Thus, the court will deny as procedurally barred claim three (d) and (f).

However, the Delaware Supreme Court denied as meritless allegations (a), (b), (c), (e), and (g) of claim three. Thus, the court must review these five allegations pursuant to § 2254(d) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard in affirming the Superior Court's decision. Thus, the Delaware Supreme Court's decision was not contrary to

13

clearly established Federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Cannon's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Cannon's ineffective assistance of counsel claims through "doubly deferential" lens. *Richter*, 131 S.Ct. at 788. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1. Claims Three (a),(b),(c)

Cannon's first three exhausted ineffective assistance of counsel allegations relate to the Dendys' out-of-court and trial statements regarding their identification of Cannon as the shooter. In claim three (a), Cannon alleges that defense counsel should have objected to the admission of the Dendys' prior out-of-court statements because the State did not lay the proper foundation as required by Del. Code Ann. tit. 11, § 3507. Claim three (b) asserts that defense counsel should have objected to the Dendys' testimony that unnamed persons told them Messy was shooter as constituting inadmissible hearsay. And finally, claim three (c) alleges that counsel should have requested that the jury be instructed that the Dendys' out-of-court statements could not be used to support his guilt.

Applying Delaware evidentiary law, the Delaware Supreme Court rejected all of these arguments. First, the Delaware Supreme Court held that there was no basis for counsel to object to the admission of the Dendys' prior out-of-court statements pursuant to § 3507, because both

14

Richard and Terrence Dendy "testified on direct and cross-examination concerning the shooting as well as their original statements to police." *Dendy*, 2010 WL 1267751, at *2. As for Cannon's contention that counsel should have objected to the Dendys' trial testimony that "people" told them "Messy" did the shooting as inadmissible hearsay, Cannon raised the same underlying hearsay argument on direct appeal, and the Delaware Supreme Court denied it as meritless. Consequently, in his post-conviction appeal, the Delaware Supreme Court held that the argument was barred under Rule 61(i)(4) as formerly adjudicated. And finally, with respect to Cannon's contention that trial counsel should have asked for an instruction limiting the jury's consideration of the Dendys' out-of-court statements to the witnesses' credibility, the Delaware Supreme Court concluded there was no basis for requesting this type of instruction, because § 3507 permits the admission of a witness' out-of-court statement as substantive evidence of guilt. *Id.*

On habeas review, the court must defer to the Delaware Supreme Court's interpretation and application of Delaware law. In turn, an attorney does not provide ineffective assistance by failing to raise meritless objections or arguments. Given the Delaware Supreme Court's conclusion that defense counsel did not violate Delaware evidentiary rules by acting or not acting in the manner described by Cannon,[3] the court cannot conclude that trial counsel was ineffective. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim three (a), (b), and (c).

---

[3] Although the Delaware Supreme Court denied claim three (b) as procedurally barred rather than as meritless, that decision was based on the fact that it had already determined on direct appeal that the Dendys' testimony did not constitute inadmissible hearsay. Considering that an attorney does not perform deficiently by failing to raise a meritless objection, the court concludes that the Delaware Supreme Court's denial of claim three (b) on post-conviction appeal constituted a reasonable application of *Strickland.*

2.   Claim Three (e)

Cannon next asserts that counsel was ineffective for failing to conduct a forensic examination of the crime scene. In his Rule 61 affidavit, trial counsel explained that he did not perform such an investigation because the shooting itself was not at issue. Rather, the issue was "the credibility of an eye witness and the victim. Counsel was aware that the witness and victim intended to testify that [Cannon ] was not perpetrator as previously thought." (D.I. 19, State's App. to Ans. Br. in *Cannon v. State*, No.596,2009, at B7)   Noting that the "only issue in dispute was the identity of the shooter," as well as the absence of any evidence rebutting the presumption that trial counsel exercised sound trial strategy in not conducting a forensic examination of the crime scene itself, the Delaware Supreme Court rejected as meritless the instant argument. *Cannon*, 2010 WL 1267751, at *3.

In this proceeding, Cannon has not demonstrated prejudice, because he does not even suggest what evidence could have been discovered at the scene that would have benefitted him. Thus, viewing the instant allegation through doubly deferential lens applicable on habeas review, the court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in denying this claim. Accordingly, the court will deny claim three (e).

3.   Claim three (g)

Finally, Cannon contends that defense counsel was ineffective for not calling the evidence detection officer who collected the shell casings to testify that the casings had not been tested for fingerprints. In denying this claim, the Delaware Supreme Court explained:

> [t]he record reflects that the officer had been subpoenaed to testify at trial by the State, but had not been subpoenaed by defense counsel. By the time the prosecutor announced that he had decided to call the chief investigating officer to testify instead of the evidence detection officer, the evidence detection officer had already been told that he would not be needed and was unavailable. Ultimately, however, defense counsel was able to elicit the testimony he needed from the chief investigating officer [Detective Selekman]. As

16

such, even assuming that counsel's performance was deficient in failing to subpoena the officer, there is no evidence that Cannon suffered any prejudice as a result.

*Cannon*, 2010 WL 1267751, at *3.

During the trial, it was clearly understood that no testing was done on the casings recovered from the crime scene. Significantly, in this proceeding, Cannon does not indicate what favorable testimony he would have been able to elicit from the evidence detection officer that trial counsel was unable to elicit from Detective Selekman. Thus, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying this claim for lack of prejudice.

### D. Claim Five: Procedurally Barred by Application of Independent and Adequate State Procedural Rule

In claim five, Cannon contends that he did not knowingly and voluntarily waive his right to a jury trial for the PDWPP charge. The record reveals, and Cannon concedes, that he did not present this jury trial waiver issue to the Delaware Supreme Court on direct appeal, in his Rule 61 motion, or in his opening brief on post-conviction appeal. Rather, after briefing was completed in his post-conviction appeal, Cannon filed in the Delaware Supreme Court a motion for remand, asking the Delaware Supreme Court to apply the "interest of justice" exception contained in the plain error doctrine of Delaware Supreme Court Rule 8 and remand the case back to the Superior Court for a determination as to whether he voluntarily waived his right to a jury trial on the PDWPP charge. In the same decision denying Cannon's post-conviction appeal, the Delaware Supreme Court denied as moot the motion to remand, and noted that the "motion is without merit in any case." *See Cannon*, 2010 WL 1267751, at *3 n.11. The Delaware Supreme Court explained that "the [remand] motion was filed after briefing was completed and the appeal

17

had been submitted for decision. Cannon failed to demonstrate good cause for a remand at that stage of the proceedings." *Id.*

Delaware Supreme Court Rules 8 and 14 articulate the parameters of Delaware's "waiver of appellate arguments" doctrine. For instance, pursuant to Delaware Supreme Court Rule 8, "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Similarly, Delaware Supreme Court Rule 14(b)(vi)(A)(3) states that "[t]he merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal." In this case, the Delaware Supreme Court's explanation that it was denying Cannon's remand motion because it was filed after the completion of appellate briefing, and because there was no probable cause for a remand, was a "plain statement" under *Harris v. Reed* that its decision rested on Delaware's waiver law, namely, Delaware Supreme Court Rules 8 and 14(b)(vi)(A)(3).

As previously explained, it is well-settled that Delaware Supreme Court Rule 8 constitutes an independent and adequate state procedural rule precluding federal habeas review. *See supra* at 10. However, whether or not Delaware Supreme Court Rule 14(b)(vi)(A)(3) constitutes an independent and adequate state procedural rule is an question of first impression for this court. For the following reasons, the court concludes that Rule 14(b)(vi)(A)(3) does, indeed, constitute an independent and adequate state law barrier to federal habeas review.

"A state procedural rule is adequate if it was firmly established and regularly followed at the time of the alleged procedural default." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). In turn, to "be considered firmly established and regularly followed, (1) the state procedural rule must speak in unmistakable terms; (2) all appellate courts must have refused to review the petitioner's

18

claims on the merits; and (3) the state courts' refusal in this instance must be consistent with other decisions." *Lewis v. Horn*, 581 F.3d 92, 105 (3d Cir. 2009)(internal citations omitted). Delaware Supreme Court Rule 14(b)(vi)(A)(3), and the Delaware Supreme Court's application of that rule to Cannon's case, satisfies all of these requirements. First, Rule 14(b)(vi)(A)(3) speaks in clear and unmistakable terms, and explicitly states that an argument not raised in the body of an appellate opening brief shall be deemed waived. Second, the Delaware Supreme Court (on post-conviction appeal) was the only state appellate court before which Cannon filed the motion for remand, and that court did not review the merits of the jury trial waiver issue because the remand request/jury trial waiver issue was not presented in the opening appellate brief. And finally, the Delaware Supreme Court's refusal to review the merits of Cannon's February 1, 2010 remand motion (and, implicitly, the merits of the jury trial waiver issue) for failure to raise the issue in the body of the opening appellate brief was consistent with other Delaware Supreme Court decisions. Significantly, since 1958, the Delaware Supreme Court has consistently and repeatedly held that the failure to raise a legal issue in the text of an opening appellate brief on appeal constitutes a waiver of that claim on appeal; the cases cited hereafter represent only a small sampling of such decisions.[4] *See Stilwell v. Parsons*, 145 A.2d 397, 02 (Del. 1958); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993); *Turnbull v. Fink*, 644 A.2d 1322, 1324 (Del.1994); *Roca v. E.I. du Pont de Nemours and Co.*, 842 A.2d 1238, 1242-43

---

[4] Indeed, the court has discovered only one decision, *Flamer v. State*, 953 A.2d 130, 135 (Del. 2008), where the Delaware Supreme Court determined that the defendant waived all of his legal issues on appeal, but proceeded to conclude that the "interests of justice" required examination of one issue raised in the case. In *Flamer*, the defendant's waiver of his arguments stemmed from his failure to cite any cases in his opening brief to support his arguments regarding Delaware Rule of Evidence 106. However, the Delaware Supreme Court concluded that, given the newness of Rule 106, it may have been impossible for Flamer to find any supporting caselaw to cite. *Id.* No such circumstances existed in Cannon's case.

(Del. 2004); *Dixon v. State*, 41 A.3d 429 (Table), 2012 WL 892632, at *1 n.2 (Del. Mar. 15,
2012); *Roten v. State*, 49 A.3d 1194 (Table), 2012 WL 3096659, at *1 n.3 (Del. July 30, 2012);
*Erskine v. State*, 2013 WL 1919121, at *1 n.3 (Del. May 7, 2013). For all of these reasons, the
court concludes that Rule 14(b)'s waiver doctrine was firmly established and regularly followed
when Cannon filed his remand motion on February 1, 2010.

Given the Delaware Supreme Court's explicit explanation that its refusal to review the
substance of Cannon's jury trial waiver claim was due to the fact that Cannon failed to raise the
remand request and/or jury trial waiver issue in the opening appellate brief, the court concurs
with the State's contention that the Delaware Supreme Court relied on an independent and
adequate state procedural rule in refusing to review the merits of claim five.[5] Thus, claim five is
procedurally defaulted, and the court cannot review its merits absent a showing of cause for the
default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will
occur if the claim is not reviewed.

Cannon does not assert any cause for his default of the instant jury trial waiver argument.
Rather, he merely contends that he exhausted state remedies for this argument by presenting it to
the Delaware Supreme Court in his motion to remand and by citing specific federal constitutional
or statutory provisions. (D.I. 8 at 6-7) This argument is unavailing, because exhaustion requires
that the claim be presented to the highest state court in a manner permitting the state court to

---

[5] The court finds support for this conclusion in *Buck v. Colleran*, 115 F. App'x 526, 528 (3d Cir.
2004), a Third Circuit case involving Rule 1925(b) of the Pennsylvania Rules of Appellate
Procedure. In *Buck*, the Third Circuit recognized that a failure to comply with Rule 1925(b) and
identify all the issues to be reviewed on appeal resulting in a waiver of those claims at the state
court level constitutes a procedural default on independent and adequate state grounds.
Significantly, Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure requires an
appellant to file a concise statement of errors complained of on appeal; this requirement is
similar to Delaware Supreme Court Rule 14's requirement that all arguments must be presented
in the opening appellate brief in order to avoid waiver. Although not precedential, the court
finds the *Buck* Court's reasoning persuasive and, therefore, follows suit.

review the claim on its merits. As previously explained, the fact that Cannon presented the instant jury waiver issue in his motion to remand rather than in his opening appellate brief caused the Delaware Supreme Court to view the argument as waived; the omission or inclusion of specific citations does not "cure" this error.

In the absence of cause, the court need not discuss the issue of prejudice. Nevertheless, Cannon's conclusory statement that his right to a fair trial was prejudiced by the absence of any explicit waiver of his right to have a jury trial on the PDWPP charge fails to demonstrate the prejudice needed to excuse a procedural default. Significantly, there is no Supreme Court or constitutional precedent requiring a court to conduct an on-the-record colloquy before accepting a defendant's waiver of his right to be tried by a jury. *See United States v. Lilly*, 536 F.3d 190, 197 (3d Cir. 2008). In addition, Cannon's assertions do not satisfy his burden to establish that his jury trial waiver was not expressly and intelligently made. *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942).

Cannon also contends that the court should excuse his default in order to prevent a miscarriage of justice. This argument is similarly unavailing, because he has failed to provide "new reliable evidence" of his actual innocence. Accordingly, the court will deny claim five as procedurally barred.[6]

---

[6] The court does not view the Delaware Supreme Court's statement that the "**motion [to remand]** is without merit in any case" as an alternative holding denying as meritless Cannon's **jury trial waiver argument**. The language used by the Delaware Supreme Court indicates that it found Cannon's reasons for remand to be meritless, not that the actual jury trial waiver argument lacked merit. Nevertheless, even if the Delaware Supreme Court did alternatively deny as meritless Cannon's underlying jury trial waiver argument, the court still denies claim five as procedurally defaulted, given the Delaware Supreme Court's explicit invocation of the waiver doctrine set forth in Delaware Supreme Court Rules 8 and 14. *See Harris*, 489 U.S. at 264 n.10; *Johnson v. Pinchak*, 392 F.3d 551, 557-58 (Del. 2004).

### E. Claim Six:  Actual Innocence

In claim six, Cannon contends that he is actually innocent of the crimes for which he was convicted.  Specifically, he argues that his actual innocence is demonstrated by the fact that the Dendys recanted their out-of-court identification of him as being the shooter.

The Supreme Court has not resolved whether a prisoner is entitled to habeas relief for a freestanding claim of actual innocence.  *See McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924 (2013); *see also Sistrunk v. Rozum*, 674 F.3d 181, 187 n.2 (3d Cir. 2012).  Rather, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural [or timeliness] bar to relief."  *Id.*  However , these "gateway claims" of actual innocence will permit a habeas court to review the merits of procedurally barred claims only if the petitioner proves his claim of actual innocence with  new reliable evidence that was not presented at trial.  *House*, 126 S.Ct. at 2077;  *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004).

Given the absence of clearly settled federal law establishing the cognizability of a freestanding "actual innocence" claim, the court will deny claim six for failing to present a proper basis for habeas relief.  Nevertheless, even if the court were to consider the instant argument as presenting a proper basis for federal habeas relief, it would be unavailing.  In *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the Supreme Court raised the possibility of recognizing "actual innocence" claims as cognizable issues in capital cases, but advised that the burden of showing actual innocence in order to establish a freestanding claim would be higher than the burden to make out a gateway claim of actual innocence.  *Id.*  In this case, Cannon has not even satisfied the burden for establishing a gateway claim of actual innocence because he has

not proffered any new reliable evidence of his actual innocence that was not presented at trial. Thus, his attempt to establish a freestanding claim of actual innocence necessarily fails.

### F.   Motion for Appointment of Counsel

During the pendency of this proceeding, Cannon filed a motion requesting the appointment of counsel. (D.I. 23)  Given the court's conclusion that the instant petition does not warrant relief, the court will deny the motion as moot.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Cannon's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable.  Therefore, the court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, Cannon's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability.  An appropriate order shall issue.